COMMERCIAL INVESTMENT TRUST *v.* STEWART.

1. FACTORS—DEFINED.

A factor is one whose business it is to receive and sell goods for a commission; he differs from a broker in that he is intrusted with the possession of the goods to be sold, and usually sells in his own name.[1]

2. SAME—DEL CREDERE FACTOR.

Where, in consideration of an increased commission, the factor guarantees the payment of debts arising through his agency, he is said to sell upon a *del credere* commission.[2]

3. SAME—TIME DRAFT AND TRUST RECEIPT GIVEN BY FACTOR READ AS ONE DOCUMENT.

Where a dealer was furnished with automobiles to sell under an arrangement which was set forth in a trust receipt attached to and part of the same paper as that of a time draft which was accepted by him and given "as security," and which certified that his "attached" signatures on both were genuine, the time draft and the trust receipt must be read as one document.[3]

4. SAME—DEL CREDERE FACTOR.

A dealer who agreed to hold automobiles in trust to store without charge or to sell as a factor for cash or cash and notes indorsed by him and acceptable to his principal; if unsold, to return the automobiles unused upon demand, and if sold, to keep the proceeds separate and account therefor, and accepted a time draft "as security," he was a *del credere* factor.[4]

5. SAME—DEL CREDERE FACTOR HAD NO RIGHT TO SATISFY HIS OWN DEBT WITH PROPERTY HELD FOR SALE ON COMMISSION.

Where a factor received automobiles to sell on commission, to keep the proceeds separate and distinct from his own funds, and to account therefor, he had no right to turn over the cars to satisfy a pre-existing debt of his own.[5]

[1]Brokers, 7 C. J. § 11; Factors, 25 C. J. § 1; [2]Factors, 25 C. J. § 2; [3]Contracts, 13 C. J. § 488; [4]Factors, 25 C. J. § 6; [5]Id., 25 C. J. § 17.

Transfer of chattels in satisfaction of pre-existing debt, as a *bona fide* purchaser as against original vendor, from whom they were fraudulently obtained by transferer, see note in 35 L. R. A. (N. S.) 1174.

On rights and powers of *del credere* factor, see notes in 18 L. R. A. (N. S.) 139; 39 L. R. A. (N. S.) 623.

6. Same—Replevin—Bona Fide Purchaser.

A pre-existing debt is not such a consideration or payment for the transfer of automobiles by a factor who was in possession for sale on commission under an accepted time draft given "as security" as will sustain a plea of "*bona fide* purchaser" as against replevin by the holder of the draft.[6]

Error to Washtenaw; Sample (George W.), J. Submitted April 14, 1926. (Docket No. 103.) Decided July 1, 1926.

Replevin by the Commercial Investment Trust against Earl B. Stewart for the possession of certain automobiles. Judgment for defendant *non obstante veredicto.* Plaintiff brings error. Reversed, and judgment ordered entered on the verdict.

*Stevenson, Butzel, Eaman & Long* (*A. G. Urquhart* and *John D. Thomas,* of counsel), for appellant.

*Stivers & Laird* (*Joseph C. Hooper,* of counsel), for appellee.

Clark, J. H. F. Gaylord was engaged in selling Studebaker automobiles in Ann Arbor. He obtained the cars from the manufacturer in Detroit. The arrangement by which he was permitted to receive, to have, and to sell cars is shown by the document on the following page.

He was indebted to defendant, Stewart, and to satisfy the debt he turned over to Stewart two of the cars mentioned in the above paper. Plaintiff brought replevin and had verdict, but on decision of a reserved motion to direct a verdict, defendant had judgment *non obstante.* The trial judge did not state his reason or reasons for ordering judgment for defendant. We will assume that he accepted the views of counsel for defendant. Defendant has no assignments of error.

[6]Replevin, 34 Cyc. p. 1418.

The Motor Cars mentioned hereon are as follows:

| | (SERIAL NO.) | (AMOUNT) |
|---|---|---|
| One New Studebaker | 109628 | $807.70 |
| " " " | 124533 | $807.70 |
| " " " | 221472 | $1025.00 |
| " " " | 281601 | $1025.00 |
| " " " | | $3665.40 |

We hereby certify that attached dealer's signatures are genuine.

Interest ceases on partial payments.

TIME DRAFT    No. 11399

Detroit (Ann Arbor) Michigan, April 26th, 191

Three months ..... after date ..... pay to the order of ..... $3665.40

with interest from acceptance at ..... per cent per annum, and exchange and collection charges as security

To E. F. Gaylord,
Ann Arbor, Michigan.

Payable at ..... Bank

Value Received and charge to
THE STUDEBAKER CORPORATION
OF AMERICA
By .....

PLAINTIFF'S EXHIBIT "A"

TRUST RECEIPT    No. 11399

Detroit (Ann Arbor) Michigan.

RECEIVED OF Studebaker Corporation of Am. BANK OF Detroit, Michigan.

on behalf of the holder of time draft of even number herewith, which draft we have this day accepted.

Four Studebaker Motor Car, @ Serial Nos. 109626-124533-221472-221601

and in consideration thereof, WE AGREE TO HOLD SAID PROPERTY IN TRUST for the holder of said time draft for the purpose of storing said property free of charge or selling same as a factor for the account of the holder of said time draft for cash or for cash and retail purchaser's notes, endorsed by us, and acceptable to the holder of said time draft for not less than the amounts shown on the margin hereof, and we agree to return the said property unused and in good order to the holder of said time draft upon demand, or if sold, to keep the proceeds thereof and separate from our funds and to account for and pay over said proceeds forthwith to the holder of said time draft.

WITNESS:

By .....

Dealer's Signature

Officer or Firm Member.

April 28th, 191

Plaintiff brings error and contends, rightly we think, that Gaylord was a *del credere* factor of plaintiff, his principal.

"A factor is one whose business it is to receive and sell goods for a commission. He differs from a broker in that he is entrusted with the possession of the goods to be sold, and usually sells in his own name." 2 Mechem on Agency (2d Ed.), § 2497.

"Where, in consideration of an increased commission, the factor guarantees the payment of debts arising through his agency, he is said to sell upon a *del credere* commission." 2 Mechem on Agency (2d Ed.), § 2498.

"A *del credere* factor or a factor with a *del credere* commission or agency is one who in consideration of a higher compensation expressly engages to pay his principal the price of all goods sold by himself, if the purchaser fails so to do." 25 C. J. p. 341.

"It is not at all inconsistent with the factor's situation as an agent merely that he has, by special contract, undertaken to be personally responsible for the payment of the price of the goods he sells. That, ordinarily, is the common case of the *del credere* commission." 2 Mechem on Agency (2d Ed.), § 2499.

"*Del credere* factor. The fact that a factor is acting under a *del credere* commission does not affect the ordinary relations existing between him and his principal; except for the additional security afforded the principal, their reciprocal rights, duties, and liabilities remain the same." 25 C. J. p. 343.

Mechem in discussing factors states:

"It is ordinarily the characteristic of an agency rather than of a sale that the principal retains the title to the goods consigned, and to the thing for which they may be exchanged or into which they may be transformed, and that the proceeds of them when sold are to be held as such and are to be accounted for as his property; that he shall have the right to recall the goods or demand the proceeds at his pleasure; that the risk of their loss shall be his unless specially assumed by the other party; that the consignor shall have the right to determine the price and the terms and conditions of sale; that he shall not have the right to demand the proceeds until the goods are sold, unless some other special arrangement has been made; that the nonpayment of the price for which the goods are sold shall be the loss of the consignor unless the other party has specially agreed to indemnify or unless the loss can be charged to the neglect or default of the other as a selling agent." 2 Mechem on Agency (2d Ed.), § 2499, p. 2109.

"The relation of principal and factor has long been regarded as beneficial in the transaction of business, and is of a fiduciary character, the factor being regarded in some instances, as where he sells in his own name, as a trustee of an express trust.   But it is competent for the parties to change by agreement the ordinary legal relations existing between factor and principal; this must be done by an agreement which clearly points to that result, otherwise it will be presumed that their dealings are governed by the rules of law ordinarily applicable to dealings between principal and factor."    25 C. J. p. 342, § 5.

The time draft and trust receipt must be read as one document.   This appears on the face of the paper itself and it may be noted that a certificate appears on the time draft stating:    "We hereby certify that attached dealer's signatures are genuine."    On the time draft there is one signature of that factor or dealer Gaylord, that on the acceptance.   On the receipt there is one signature of the factor or dealer. The time draft refers to both of these signatures as *attached*.    And the writing is, physically, one paper.

We quote from brief of counsel:

"When the time draft and trust receipt are read together it is found that Gaylord's rights and obligations in respect of the automobiles delivered to him by plaintiff under plaintiff's Exhibit A were:

"(*a*)  To hold the property in trust for the purposes of storing the same free of charge or selling the same as factor of the plaintiff for cash or cash and retail purchaser's notes acceptable to the plaintiff and indorsed by Gaylord.

"(*b*)  If sold, to keep the proceeds distinct and separate and to account to plaintiff for the proceeds of the sale.

"(*c*)  If not sold, to return the property, unused and in good order, to the plaintiff upon demand.

"(*d*)  To pay 'as security' as a factor with a *del credere* commission.    It is the factor's guarantee of the debt arising through his agency, viz., the time draft.

"An examination of the trust receipt and time draft shows that it has all of the ordinary essential characteristics as given by Mechem of a factor's agreement who sells on a *del credere* commission, viz. :

"(1) The title to the goods is retained in the principal.

"(2) The proceeds from the sale of the goods are to belong to the principal and to be kept separate.

"(3) The principal has the right to recall the goods upon demand.

"(4) The principal determined the price and terms and conditions of sale.

"(5) The principal has not the right to demand the payment of any money unless and until the goods are sold, and then has the right to the specific proceeds.

"(6) The factor has the right to sell the goods for more than the amount named by the principal, keeping the excess as his commission.

"(7) The factor, with a *del credere* commission, guarantees the obligations undertaken by him through the time draft.

"(8) The instruments contain no absolute obligation to pay any sum of money but only a promise to pay 'as security.' "

The factor did not own the cars. He might sell them in due course for cash, or for cash and purchasers' notes indorsed and acceptable, which proceeds he was to keep distinct and separate from his own funds. He had no right to turn over the cars to satisfy a pre-existing debt of his own.

"In the absence of a statute protecting such pledges, the rule is well established that a factor has no implied authority to pledge the principal's goods for the factor's own debt, or for advances made to himself. This doctrine results from the fact that the factor is but an agent, and as such can bind his principal only when his acts are within the scope of his authority. Authority to sell for the benefit of his principal can in no way be stretched into authority to pledge for his own benefit. Nor does it make any difference that the pledgee was ignorant of the extent of the factor's authority, or supposed him to be the real owner of the goods. As in the case of other agents, the person

dealing with the factor must ascertain the extent of his authority, and omits to do so at his peril. Mere local usages not known and assented to cannot change the rule." 2 Mechem on Agency (2d Ed.), § 2509.

"It is a well-settled rule of the common law that without the principal's consent or authority a factor has no power to pledge his principal's goods for his own individual debts, so as to pass any title to or interest in the goods to the pledgee as against the principal; and this rule applies even though a bill of lading has been issued to the factor for the goods, or the factor has a lien for advances, etc., or the active member of the firm of factors is also a partner of the consignor. Except to the extent that this rule has been modified by the adoption of the factor's acts, the general rule also applies, although the pledgee has no notice of the pledgor's character as factor; and of course applies where the pledgee has notice of such character or of the principal's interest in the goods. The general rule does not allow the factor to pledge by the indorsement and delivery of the bill of lading or other symbol of title any more than by the delivery of the goods themselves." 25 C. J. p. 351, § 18.

"A factor or agent who has power to sell the produce of his principal has no power to affect the property by tortiously pledging it as a security or satisfaction for a debt of his own, and it is of no consequence that the pledgee is ignorant of the factor's not being the owner." *Warner* v. *Martin,* 11 How. (U. S.) 209, 224.

But it is said that defendant was a *bona fide* purchaser. It was held in *Schloss* v. *Feltus,* 103 Mich. 525 (36 L. R. A. 161), quoting syllabus:

"A naked, pre-existing debt is not such a consideration or payment for the transfer of a stock of goods as will defeat replevin by the original vendors, who set up fraud in the purchase of the goods from them."

and from the opinion:

"A pre-existing debt is not such a consideration as will sustain the plea of 'bona fide purchaser for value,' except in the case of negotiable paper."

See, also, 27 L. R. A. (N. S.) 620; *Wails* v. *Farring-ton,* 27 Okla. 754 (116 Pac. 428, 35 L. R. A. [N. S.] 1174, and note).

It was intended that the cars should be sold by the factor.    Had a sale been made to a purchaser in good faith, and if plaintiff were attacking such a sale, a different question would be presented, and *Becker* v. *La Core,* 211 Mich. 684, and other similar cases cited by defendant would be considered, but such cases are not here applicable.

Defendant was not entitled to a directed verdict as he here contends.    Plaintiff was entitled to judgment on the verdict.

Reversed and remanded, with direction to enter judgment on the verdict.    Plaintiff will have costs.

BIRD, C. J., and SHARPE, SNOW, STEERE, FELLOWS, WIEST, and MCDONALD, JJ., concurred.